BARBARA A. LAWLESS - Bar # 53195
EMILY S. McGRATH - Bar # 289624
CAROLE L. OKOLOWICZ - Bar # 320862
LAWLESS & LAWLESS
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone:  (415) 391-7555
Facsimile:  (415) 391-4228

Attorneys for Plaintiff
MUMTAZ KUTTY, Ph.D.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUMTAZ KUTTY, Ph.D., <br><br> Plaintiff, <br><br> vs. <br><br> SAP AMERICA, INC., JOHN INSLEY, and DOES ONE through SEVENTY, inclusive, <br><br> Defendants. | ) <br> ) Docket No. <br> ) <br> ) COMPLAINT FOR DAMAGES ARISING <br> ) FROM: BREACH OF CONTRACT; BAD <br> ) FAITH BREACH OF CONTRACT; <br> ) INTENTIONAL MISREPRESENTATION; <br> ) NEGLIGENT MISREPRESENTATION; <br> ) EMPLOYMENT DISCRIMINATION <br> ) BASED ON SEX, NATIONAL ORIGIN, <br> ) AND ASSOCIATIONAL DISABILITY; <br> ) DISCHARGE IN VIOLATION OF PUBLIC <br> ) POLICY; FAILURE TO PREVENT <br> ) DISCRIMINATION; HARASSMENT; <br> ) INTENTIONAL INFLICTION OF <br> ) EMOTIONAL DISTRESS; INTENTIONAL <br> ) INTERFERENCE WITH CONTRACTUAL <br> ) RELATIONS; INJUNCTIVE RELIEF, FOR <br> ) ATTORNEYS' FEES AND COSTS AND <br> ) FOR PUNITIVE DAMAGES <br> ) <br> ) **JURY TRIAL REQUESTED** |

**I.**

**NATURE OF THE ACTION**

1.    This action is brought by Plaintiff MUMTAZ KUTTY, Ph.D. (hereafter "KUTTY"), ACCOUNT EXECUTIVE - DIGITAL SUPPLY, employed by SAP AMERICA, INC. (hereafter "Defendant" or "SAP") for bad faith breach of contract, intentional misrepresentation, discrimination and harassment based on sex, national origin, and associational disability to wit: hostile work environment and wrongful discharge.

- 1 -
COMPLAINT

2.     This action is brought under the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et seq. as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (Title VII), and the Declaratory Judgment Act, 28 U.S.C. §2201 et seq.  This action is also brought under California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 et seq. Plaintiff seeks back pay, front pay, and compensatory damages, as well as declaratory judgment and injunction to restrain Defendant employer from committing prohibited personnel practices, policies, customs and usages, from discriminating against Plaintiff and other employees of SAP based on sex, national origin and/or association with a disabled person. Plaintiff seeks injunctive relief requiring Defendant employer to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII and the FEHA.

## II.

## **PARTIES**

3.     Plaintiff, Mumtaz Kutty, Ph.D. ("Plaintiff"), a resident of Nevada, is an Indian female with a disabled husband for whom she had caretaking duties during her employment with Defendants, including during 2016 and 2017, was at all times relevant hereto an employee of Defendant SAP AMERICA, INC. Her work was based in the State of California, and the County of Santa Clara.

4.     Plaintiff alleges that at all pertinent times mentioned in the complaint, Defendant SAP AMERICA, INC. ("SAP"), was and is a corporation organized and existing under the laws of the State of Delaware and is and was, at all times mentioned herein qualified to do business in California and does business as SAP AMERICA, INC.

5.     Plaintiff alleges that at all pertinent times mentioned in the complaint, Defendant JOHN INSLEY was and is a resident of the State of California, and the County of Orange and that Plaintiff is ignorant of the true names of the Defendants sued here under the fictitious names DOES ONE through DOES SEVENTY inclusive.  Plaintiff is informed and believes that each of the DOE Defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

///

## III.

## JURISDICTION AND VENUE

6.    The jurisdiction of the Court is based on Diversity under Title 28, Section 1332 of the United States Code (28 U.S.C. § 32(a)).  The Plaintiff, Mumtaz Kutty, is a resident of Nevada and SAP is a resident of Delaware where it is incorporated and Pennsylvania where it has its principal place of business.  John Insley is a resident of the State of California.  The amount in controversy exceeds $75,000.  The jurisdiction of the Court is also based on the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et seq., 28 U.S.C. §§ 1331, 1337, and 1343, which grant district courts jurisdiction over actions alleging unlawful and discriminatory employment practices and provides for judicial review of cases involving discrimination based on sex, national origin, and associational disability.

7.    This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C § 1367(a) because Plaintiff's claims under the California Fair Employment and Housing Act (FEHA) form part of the same case or controversy under Article III of the United States Constitution, as are her contract and tort claims. Plaintiff's state law claims share all common operative facts with her federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interest of judicial economy, convenience, and fairness to the parties.

8.    Venue is proper in the Northern District of California pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3) because the unlawful practices alleged in this complaint occurred in the county of Santa Clara, which is situated in the Northern District of California.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.    Plaintiff has exhausted all administrative remedies necessary to bring this action. Plaintiff filed a charge of discrimination with the EEOC (charge number 556-2018-00671) that was concurrently filed with the California Department of Fair Employment and Housing (DFEH) on or about May 25, 2018. The DFEH Right to Sue Notice was issued on or about May 31, 2018. Under Cal. Gov't Code § 12965, subd. (d), the one-year statute of limitation for bringing a civil

action is tolled during the pendency of the EEOC's investigation. Plaintiff's charge alleges discrimination on the bases of: sex, national origin, and association with a disabled person. The discrimination complained of was perpetrated by other employees of Defendant during the course and scope of their employment and took place while Plaintiff was working based out of Defendant's office in Santa Clara County, California. The EEOC closed its investigation and Plaintiff was issued a Right to Sue notice for charge number 556-2018-00671from the EEOC and DFEH on or about March 29, 2019.

**V.**

**FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION**

10.  Plaintiff KUTTY is an Indian female businessperson who has taught and worked in the technology sector for decades. In 1998, Plaintiff began her tenure with SAP as a Strategic Program Director and Global Account Director, a role in which she was responsible for large customer account management. Plaintiff left SAP in 2006 and returned to SAP in March 2016 as a Senior Solution Sales Executive in the Digital Supply Chain Division. Plaintiff was at all times material herein an "employee" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f), and the California FEHA, Cal. Gov't Code § 12926.

11.  When Plaintiff first returned to SAP in 2016, she worked alongside JOHN INSLEY (hereafter "INSLEY"), a Senior Account Executive in the Supply Chain Solutions division. Upon her rehire, Plaintiff was given a portion of a mediocre "book of business," (*i.e.* customer accounts) but those accounts had minimal revenue pipeline. Despite these poor accounts, however, Plaintiff was able to meet approximately three quarters of her 2016 annual quota before the end of 2016.

12.  Plaintiff received positive feedback about her work performance from her direct manager, the division General Manager, coworkers, and customers through 2016.

13.  In early 2017, INSLEY was promoted from his sales position to Vice President of Supply Chain and IoT. INSLEY thus became Plaintiff's direct supervisor. INSLEY began to single out Plaintiff and treat her differently than his other direct reports, all of whom were Caucasian males. For example, INSLEY falsely accused Plaintiff of sleeping during a client meeting with Intel, a customer for whom Plaintiff had set up and managed dozens of sales

meetings over the course of approximately 18 months in order to establish an extremely profitable relationship. INSLEY never discussed this or other alleged performance issues with Plaintiff directly, as he often did with her Caucasian male peers, before criticizing Plaintiff to Human Resources.

14.  When contacted by a Human Resources specialist, Plaintiff complained that INSLEY was treating her differently from his other direct reports because, for example, he never came to her to discuss alleged performance concerns with her directly as he did with his Caucasian male reports.

15.  In mid-2017, INSLEY gave a portion of Plaintiff's accounts to her Caucasian male peer Earle Zucht. Some accounts, such as Varex, were accounts for which Plaintiff had created a substantial new business pipeline, resulting in steady streams of revenue each quarter. Plaintiff has no knowledge of her Caucasian male coworkers' accounts producing a steady stream of revenue being given to other employees.

16.  Just a few weeks after INSLEY stripped Plaintiff of her steady producing accounts, INSLEY put Plaintiff on a performance improvement plan ("PIP") that he called a "performance review" based on her alleged failure to show "linearity," *i.e.* steady streams of revenue each quarter. The PIP contained other misrepresentations and attempts to scapegoat Plaintiff, including but not limited to: INSLEY falsely accused Plaintiff of creating challenges with the Cisco account when in fact INSLEY created challenges by insisting on using an inadequate consulting partner who delayed a key demonstration by three months. Additionally, INSLEY accused Plaintiff of unprofessionally managing a meeting with customer T-Mobile when in fact a Caucasian male was in charge of managing the meeting at issue.

17.  Plaintiff worked hard and succeeded at meeting all the requirements of her PIP, which included increasing her number of client meetings and mapping out her accounts' business plans and revenue forecasts. At a quarterly meeting for the entire Digital Supply Chain Division, including INSLEY, Plaintiff presented her progress with the large Intel account, which had a large deal that was on track to close before the end of calendar year 2017.

18.  Shortly thereafter, INSLEY told Plaintiff her PIP was actually just an informal

review and he proceeded to put her on another PIP. INSLEY told Plaintiff she could no longer include Intel in her revenue forecasts because it was already a "done deal." Plaintiff specifically asked for reassurance that she would be paid the commission she was so close to earning on the Intel account, and INSLEY assured her that she would be.

19.     In the weeks that followed, Plaintiff continued to meet or exceed her PIP goals, including initiating and closing a brand-new account in November 2017. Plaintiff's sales performance exceeded that of her Caucasian male peers.

20.     On December 12, 2017, INSLEY fired Plaintiff.

21.     On December 27, 2017, Plaintiff's Intel deal closed and SAP received approximately $11 million in revenue from this account. Under the SAP commission plan, Plaintiff should have earned over $200,000 for her work. Plaintiff received $0 in commission for the Intel account. Plaintiff has no knowledge of Caucasian male employees being denied their six-figure bonuses by being terminated within days of the closing of their deals. Plaintiff's Caucasian male coworkers may have been given commissions Plaintiff earned.

22.     After her termination, Plaintiff's accounts were given to one or more of her Caucasian male coworkers even though he/they were less experienced and less qualified to manage the accounts.

**VI.**

**<u>CAUSES OF ACTION</u>**

**FIRST CAUSE OF ACTION**
**Breach of Contract**

As a first, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

23.     Plaintiff hereby incorporates by reference Paragraphs 1 through 22, inclusive, as though set forth here in full.

24.     In or about August 2017 and October 2017, INSLEY promised Plaintiff that she would be paid commissions for her work on the Intel account.

25.     Plaintiff relied on the promises of INSLEY and continued to work diligently on the

- 6 -

COMPLAINT

Intel account and continued her employment with SAP based on those promises.

26. In violation of the agreement INSLEY made with Plaintiff, Plaintiff was discriminated against, harassed, discharged from her job, and denied substantial commissions she had earned.

27. On or about December 12, 2017, Defendants SAP, INSLEY and DOES FORTY to FIFTY breached their agreement with Plaintiff when she was denied substantial commissions earned.

28. As a result of the breach of contract, Plaintiff suffered a loss of commissions in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### Bad Faith Breach of Contract

As a second, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE to THIRTY, and each of them, and for a cause of action alleges:

29. Plaintiff hereby incorporates by reference Paragraphs 1 through 22, inclusive, as though set forth here in full.

30. In or about August 2017 and October 2017, INSLEY promised Plaintiff that she would be paid commissions for her work on the Intel account.

31. Plaintiff relied on the promises of INSLEY and continued to work diligently on the Intel account and continued her employment with SAP based on those promises.

32. In violation of the agreement INSLEY made with Plaintiff, Defendant interfered with Plaintiff's right to receive the benefit of INSLEY's promises by setting Plaintiff up and making sure she was terminated two weeks before the commissions were due for the purpose of denying Plaintiff the commissions owed.

33. On or about December 12, 2017, Defendants SAP and DOES FORTY to FIFTY breached their agreement with Plaintiff when she was denied substantial commissions earned.

34. As a result of the bad faith breach of contract, Plaintiff suffered a loss of commissions in an amount to be determined at trial.

COMPLAINT

**THIRD CAUSE OF ACTION**
**Intentional Misrepresentation by Making of Promises Without Intent to Perform**

As a third, separate and distinct cause of action, Plaintiff complains against all named Defendants and DOES ONE to THIRTY, and each of them, and for a cause of action alleges:

35. Plaintiff hereby incorporates by reference Paragraphs 23, inclusive, as though set forth here in full.

36. In or about August 2017 and October 2017, Defendant SAP, by and through INSLEY, made promises to Plaintiff that she would be paid commissions for her work on the Intel account. These promises were each as to material matters.

37. In August 2017, these promises were made by INSLEY during a meeting in which INSLEY and a Human Resources representative informed Plaintiff she was being put on a performance review/performance improvement plan. In October 2017, these promises were made by INSLEY during a meeting in which INSLEY informed Plaintiff she was being put on a 60-day PIP and that she should not include Intel in her revenue forecasts because it was already a done deal. INSLEY assured Plaintiff she would be paid the commission she was so close to earning on the Intel account.

38. At the time Defendants made these promises, they did not intend to keep them.

39. These Defendants made these promises for the purpose of inducing Plaintiff to rely upon them and to remain employed at SAP and continue working on the Intel account under the false premise that she would have a fair shot at receiving the commissions she was earning.

40. Plaintiff was unaware of these Defendants' intention not to perform their promises. Plaintiff acted in justifiable reliance on Defendants' promises by, among other things, continuing to work on the Intel account, remaining employed at SAP and forbearing the possibility of employment elsewhere.

41. Plaintiff did not discover the intentional misrepresentation practiced upon her by Defendants until December 12, 2019 when she was discharged in violation of Defendants' promises to her in spite of Plaintiff's performance of her end of the bargain.

42. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated here to the extent

pertinent as if set forth here in full.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation

As a fourth, separate and distinct cause of action, Plaintiff complains against all named Defendants and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

43.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

44.    In or about August 2017 and October 2017, Defendant SAP, by and through INSLEY, made promises to Plaintiff that she would be paid commissions for her work on the Intel account. These promises were each as to material matters.

45.    In August 2017, these promises were made by INSLEY during a meeting in which INSLEY and a Human Resources representative informed Plaintiff she was being put on a performance review/performance improvement plan. In October 2017, these promises were made by INSLEY during a meeting in which INSLEY informed Plaintiff she was being put on a 60-day PIP and that she should not include Intel in her revenue forecasts because it was already a done deal. INSLEY assured Plaintiff she would be paid the commission she was so close to earning on the Intel account.

46.    In fact, Defendants were negligent in that they made these representations without any reasonable ground for believing them to be true.  Defendants misled Plaintiff to believe she would be fully and fairly paid commissions she was earning including on the Intel deal.

47.    These Defendants made these representations for the purpose of inducing Plaintiff to rely upon them and to act or refrain from acting in reliance upon them.

48.    Plaintiff acted in justifiable reliance on Defendants' representations by, among other things, continuing to work on the Intel account, remaining employed at SAP, and forbearing the possibility of employment elsewhere.

49.    Plaintiff did not discover the negligent misrepresentation practiced upon her by Defendants until her termination, when Defendants refused to pay her commissions on the Intel

COMPLAINT

account.

50.    Plaintiff suffered damages legally caused by the negligent misrepresentation as stated in paragraphs 156-158, which is incorporated here to the extent pertinent as if set forth here in full.

**FIFTH CAUSE OF ACTION**
**Sex and National Origin Discrimination – Disparate Treatment in Violation of Title VII,**
**Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e**

As a fifth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

51.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

52.    By allowing SAP's managers to perpetrate sex and/or national origin-based discrimination against Plaintiff, who was an Indian female employee, and unlawfully favor non-Indian male employees, Defendants caused and/or permitted sex and/or national origin-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

53.    Defendants caused and/or permitted sex and/or national origin-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to non-Indian male colleagues, and falsely accusing her of causing problems with accounts when in fact non-Indian male employees were the cause of problems with accounts. These actions and other actions were taken in violation of 42 U.S.C. § 2000e-2.  Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced non-Indian males.

54.    Defendants also caused and/or permitted sex and/or national origin-based discrimination by creating false documentation of performance problems as pretext for terminating

her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified non-Indian males.

55.    Plaintiff filed a charge of sex and national origin discrimination with the Equal Employment Opportunity Commission within one year of the discrimination. The Equal Employment Opportunity Commission issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

56.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer damages including but not limited to back pay including commissions, front pay, loss of benefits, and emotional distress as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### SIXTH CAUSE OF ACTION
**Sex and/or National Origin Discrimination – Disparate Treatment in Violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq*.**

As a sixth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

57.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

58.    Defendants' conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her sex under Cal. Gov't Code § 12940.

59.    Defendants caused and/or permitted sex and/or national origin-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to non-Indian male colleagues, and falsely accusing her of causing problems with accounts when in fact non-Indian male employees were the cause of problems with accounts. These actions and other actions were taken in violation of California Government Code § 12900 *et*

*seq*. Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced non-Indian males.

60.    Defendants also caused and/or permitted sex and/or national origin-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified non-Indian males.

61.    Plaintiff filed a charge of sex and national origin discrimination with the California Department of Fair Employment and Housing within one year of the discrimination. The Department issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

62.    Plaintiff has suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### SEVENTH CAUSE OF ACTION
### Discharge in Violation of Public Policy

As a seventh, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE through FIFTY, and each of them, and for a cause of action alleges:

63.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

64.    At all times herein mentioned, Plaintiff was an Indian female person fully competent to perform the duties to which she was assigned.

65.    Defendants SAP and DOES ONE through FIFTY discriminated against Plaintiff on the basis of her sex and national origin, and discharged Plaintiff because of her sex and national origin, in violation of public policy.

66.    Said discharge and discrimination violated the public policy of the State of

California as stated in the California Fair Employment and Housing Act.

67.    Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**EIGHTH CAUSE OF ACTION**
**Sex Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e**

As an eighth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

68.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

69.    By allowing SAP's managers to perpetrate sex-based discrimination against Plaintiff, who was a female employee, and unlawfully favor male employees, Defendants caused and/or permitted sex-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

70.    Defendants caused and/or permitted sex-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to male colleagues, and falsely accusing her of causing problems with accounts when in fact male employees were the cause of problems with accounts. These actions and other actions were taken in violation of 42 U.S.C. § 2000e-2.  Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced males.

71.    Defendants also caused and/or permitted sex-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified males.

72.     Plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission within one year of the discrimination. The Equal Employment Opportunity Commission issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

73.     As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer damages including but not limited to back pay including commissions, front pay, loss of benefits, and emotional distress as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**NINTH CAUSE OF ACTION**
**Sex Discrimination – Disparate Treatment in Violation of**
**the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq*.**

As a ninth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

74.     Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

75.     Defendants' conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her sex under Cal. Gov't Code § 12940.

76.     Defendants caused and/or permitted sex-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to male colleagues, and falsely accusing her of causing problems with accounts when in fact male employees were the cause of problems with accounts. These actions and other actions were taken in violation of California Government Code § 12900 *et seq*. Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-

experienced males.

77.   Defendants also caused and/or permitted sex-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified males.

78.   Plaintiff filed a charge of sex discrimination with the California Department of Fair Employment and Housing within one year of the discrimination. The Department issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

79.   Plaintiff has suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**TENTH CAUSE OF ACTION**
**Discharge in Violation of Public Policy**

As a tenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE through FIFTY, and each of them, and for a cause of action alleges:

80.   Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

81.   At all times herein mentioned, Plaintiff was a female person fully competent to perform the duties to which she was assigned.

82.   Defendants SAP and DOES ONE through FIFTY discriminated against Plaintiff on the basis of her sex, and discharged Plaintiff because of her sex, in violation of public policy.

83.   Said discharge and discrimination violated the public policy of the State of California as stated in the California Fair Employment and Housing Act.

84.   Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

///

///

COMPLAINT

**ELEVENTH CAUSE OF ACTION**
**National Origin Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e**

As an eleventh, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

85.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

86.    By allowing SAP's managers to perpetrate national origin-based discrimination against Plaintiff, who was an Indian employee, and unlawfully favor non-Indian employees, Defendants caused and/or permitted national origin-based Title VII violations; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

87.    Defendants caused and/or permitted national origin-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to non-Indian colleagues, and falsely accusing her of causing problems with accounts when in fact non-Indian employees were the cause of problems with accounts. These actions and other actions were taken in violation of 42 U.S.C. § 2000e-2.  Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced non-Indian employees.

88.    Defendants also caused and/or permitted national origin-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified non-Indian employees.

89.    Plaintiff filed a charge of national origin discrimination with the Equal Employment Opportunity Commission within one year of the discrimination. The Equal Employment Opportunity Commission issued Plaintiff a right to sue letter. Plaintiff has exhausted

her administrative remedies.

90.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer damages including but not limited to back pay including commissions, front pay, loss of benefits, and emotional distress as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**TWELFTH CAUSE OF ACTION**
**National Origin Discrimination – Disparate Treatment in Violation of**
**the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq*.**

As a twelfth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

91.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

92.    Defendants' conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her national origin under Cal. Gov't Code § 12940.

93.    Defendants caused and/or permitted national origin-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to non-Indian colleagues, and falsely accusing her of causing problems with accounts when in fact non-Indian employees were the cause of problems with accounts. These actions and other actions were taken in violation of California Government Code § 12900 *et seq*. Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews.  She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced non-Indian employees.

94.    Defendants also caused and/or permitted national origin-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by

refusing to pay Plaintiff the substantial commissions she had earned. Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified non-Indian employees.

95. Plaintiff filed a charge of national origin discrimination with the California Department of Fair Employment and Housing within one year of the discrimination. The Department issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

96. Plaintiff has suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### THIRTEENTH CAUSE OF ACTION
### Discharge in Violation of Public Policy

As a thirteenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE through FIFTY, and each of them, and for a cause of action alleges:

97. Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

98. At all times herein mentioned, Plaintiff was an Indian person fully competent to perform the duties to which she was assigned.

99. Defendants SAP and DOES ONE through FIFTY discriminated against Plaintiff on the basis of her national origin, and discharged Plaintiff because of her national origin, in violation of public policy.

100. Said discharge and discrimination violated the public policy of the State of California as stated in the California Fair Employment and Housing Act.

101. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

///

COMPLAINT

**FOURTEENTH CAUSE OF ACTION**
**Associational Disability Discrimination – Disparate Treatment in Violation of Title VII, Civil Rights Act of 1964 as Amended, 42 U.S.C. § 2000e**

As a fourteenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

102.   Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

103.   By allowing SAP's managers to perpetrate associational disability-based discrimination against Plaintiff, who was married to a disabled person and undertook caretaking duties for her disabled husband during her employment with Defendants, including during 2016 and 2017, and unlawfully favor employees who did not have a relative or associate with a disability, Defendants caused and/or permitted associational disability-based discrimination in violation of Title VII; thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 2000e-5(g) and § 1981a.

104.   Defendants caused and/or permitted associational disability-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to employees who did not have a relative or associate with a disability, and falsely accusing her of causing problems with accounts when in employees who did not have a relative or associate with a disability were the cause of problems with accounts. These actions and other actions were taken in violation of 42 U.S.C. § 2000e-2.  Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews. She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced employees who did not have a relative or associate with a disability.

105.   Defendants also caused and/or permitted associational disability-based discrimination by creating false documentation of performance problems as pretext for terminating her, and by refusing to pay Plaintiff the substantial commissions she had earned.  Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced

- 19 -
COMPLAINT

and less-qualified employees who did not have a relative or associate with a disability.

106.   Plaintiff filed a charge of associational disability discrimination with the Equal Employment Opportunity Commission within one year of the discrimination. The Equal Employment Opportunity Commission issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

107.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer damages including but not limited to back pay including commissions, front pay, loss of benefits, and emotional distress as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

## FIFTEENTH CAUSE OF ACTION
### Associational Disability Discrimination – Disparate Treatment in Violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*

As a fifteenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

108.   Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

109.   Defendants' conduct as herein alleged violated the California Fair Employment and Housing Act, which makes it an unlawful employment practice for an employer to discharge or discriminate against an employee in the terms, conditions, and privileges of employment because of her association with a disabled person under Cal. Gov't Code § 12940.  Plaintiff's husband suffered from liver cancer and heart disease as well as other disabilities that required Plaintiff to work from other locations on occasion.

110.   Defendants caused and/or permitted associational disability-based discrimination by assigning her poor-performing sales accounts, reassigning some of her high-producing sales accounts to employees who did not have a relative or associate with a disability, and falsely accusing her of causing problems with accounts when in fact employees who did not have a relative or associate with a disability were the cause of problems with accounts. These actions and

other actions were taken in violation of California Government Code § 12900 *et seq.* Prior to INSLEY's appointment to Vice President of Supply Chain and IoT, Plaintiff received raises and positive performance reviews. She exceeded satisfactory performance expectations, and demonstrated the requisite experience and skill for managing accounts that were ultimately given to one or more less-experienced employees who did not have a relative or associate with a disability.

111. Defendants also caused and/or permitted associational disability-based discrimination by creating false documentation of performance problems as pretext for terminating her because Plaintiff planned to go to India to care for her husband for a few weeks after the Intel deal closed, and by refusing to pay Plaintiff the substantial commissions she had earned. Upon termination, Plaintiff's accounts and/or commissions were given to one or more less-experienced and less-qualified employees who did not have a relative or associate with a disability.

112. Plaintiff filed a charge of associational disability discrimination with the California Department of Fair Employment and Housing within one year of the discrimination. The Department issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

113. Plaintiff has suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### SIXTEENTH CAUSE OF ACTION
### Discharge in Violation of Public Policy

As a sixteenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES ONE through FIFTY, and each of them, and for a cause of action alleges:

114. Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

115. At all times herein mentioned, Plaintiff was married to a disabled person and fully competent to perform the duties to which she was assigned.

- 21 -
COMPLAINT

116. Defendants SAP and DOES ONE through FIFTY discriminated against Plaintiff on the basis of her associational disability, and discharged Plaintiff because of her associational disability, in violation of public policy.

117. Said discharge and discrimination violated the public policy of the State of California as stated in the California Fair Employment and Housing Act.

118. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

### SEVENTEENTH CAUSE OF ACTION
### Failure to Prevent Discrimination in Violation of Title VII and California Government Code § 12940(k)

As a seventeenth, separate and distinct cause of action, Plaintiff complains against Defendants SAP and DOES TWENTY-FIVE through FORTY, and each of them, and for a cause of action alleges:

119. Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

120. At all times mentioned herein, Defendants had an obligation under Title VII and under California Government Code § 12940(k) to investigate and prevent discrimination on the bases of sex, national origin, and associational disability in their workplaces.

121. In or about August 2017, Plaintiff complained to INSLEY and a Human Resources representative that she was being treated differently from her peers, all of whom were non-Indian males who did not have a relative or associate with a disability and/or did not have caretaking duties for such disabled relatives or associates as Plaintiff did.

122. Defendants failed to take the reasonable steps necessary to prevent discrimination from occurring with respect to Plaintiff. Further, Defendants failed to investigate Plaintiff's complaints. Any investigations that did take place were insufficient and self-serving.

123. As a result, Defendants failed to provide Plaintiff equal employment opportunities. Such unequal treatment violates Plaintiff's right to be free from such discrimination under Title

VII and California Government Code § 12900 *et seq*.

124.    Plaintiff filed a charge of discrimination on the basis of sex, national origin, and disability with the Equal Opportunity Employment Commission and the California Department of Fair Employment and Housing within one year of the discrimination. Both agencies issued Plaintiff a right to sue letter. Plaintiff has exhausted her administrative remedies.

125.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been directly and legally caused to suffer damages including but not limited to back pay including commissions, front pay, loss of benefits, and emotional distress as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**EIGHTEENTH CAUSE OF ACTION**
**Harassment in Violation of Title VII, Civil Rights Act of 1964 as Amended,**
**42 U.S.C. § 2000e**

As an eighteenth, separate and distinct cause of action, plaintiff complains against all Defendants, and each of them, and for a cause of action alleges:

126.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

127.    INSLEY harassed Plaintiff by making false accusations about her and accusing her of conduct which she did not engage in and set her up to appear that she was not performing when in fact she was, by criticizing her falsely to H.R., by writing her up for infractions that were not serious and/or for conduct including performance which was false, and he knew to be false, and for other harassment alleged above.  Defendants harassed Plaintiff because of her gender and/or national origin and her association with a disabled person so she would quit.  When she did not quite, they discharged her.

128.    Plaintiff filed a charge of gender harassment with the EEOC within a year of filing this complaint.

129.    Plaintiff suffered damages legally caused by these Defendants as stated below in the section entitled "DAMAGES" which is incorporated here to the extent pertinent as if set forth here in full.

**NINETEENTH CAUSE OF ACTION**
**Harassment in Violation of the California Fair Employment and Housing Act,**
**Cal. Gov't Code § 12900 *et seq*.**

As a nineteenth, separate and distinct cause of action, plaintiff complains against all Defendants, and each of them, and for a cause of action alleges:

130.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

131.    INSLEY harassed Plaintiff by making false accusations about her and accusing her of conduct which she did not engage in and set her up to appear that she was not performing when in fact she was, by criticizing her falsely to H.R., by writing her up for infractions that were not serious and/or for conduct including performance which was false, and he knew to be false, and for other harassment alleged above.  Defendants harassed Plaintiff because of her gender and/or national origin and her association with a disabled person so she would quit.  When she did not quite, they discharged her.

132.    Plaintiff filed a charge of gender harassment with the DFEH within a year of filing this complaint.

133.    Plaintiff suffered damages legally caused by these Defendants as stated below in the section entitled "DAMAGES" which is incorporated here to the extent pertinent as if set forth here in full.

**TWENTIETH CAUSE OF ACTION**
**Discharge in Violation of Public Policy**

As a twentieth, separate and distinct cause of action, plaintiff complains against all Defendants, and each of them, and for a cause of action alleges:

134.    Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

135.    At all times herein mentioned, Plaintiff was an Indian woman married to a disabled person and fully competent to perform the duties to which she was assigned.

136.    Defendants SAP and DOES ONE through FIFTY discriminated against Plaintiff on the basis of her sex and/or national origin and associational disability, and discharged Plaintiff, in

violation of public policy.

137. Said discharge and discrimination violated the public policy of the State of California as stated in the California Fair Employment and Housing Act, EEO and California Constitution.

138. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**TWENTY-FIRST CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

As a twenty-first, separate and distinct cause of action, plaintiff complains against all Defendants, and each of them, and for a cause of action alleges:

139. Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

140. On or about March 7, 2016, plaintiff accepted employment with Defendant SAP. Plaintiff was assured job security and that she would not be discriminated against, or harassed and thereafter remained in her employment in reliance on those assurances.

141. Defendants SAP and DOES ONE through FIFTY were in a position of power over plaintiff, with the potential to abuse that power. Plaintiff was in a vulnerable position because of her relative lack of power, because of her reliance on Defendants' assurances and forbearance of the possibility of becoming employed elsewhere, because she had placed her trust in Defendants, because she depended on her employment for her self-esteem and sense of belonging, because she relied upon her employment as a source of income for her support, because a wrongful termination of plaintiff's employment would likely harm plaintiff's ability to find other employment, and because of the great disparity in bargaining power between plaintiff and her employer. Defendants were aware of plaintiff's vulnerability and the reasons for it.

142. On or about December 12, 2017, Defendants discharged plaintiff or caused her to be discharged, and confirmed and ratified the discharge. Defendants' discharge of plaintiff and the manner in which they accomplished it was outrageous in that plaintiff was discriminated

against because of her sex, national origin and associational disability and in that Defendants at all times intended to discriminate against, harass and discharge plaintiff, leaving plaintiff without her employment and without the income, sense of self-worth, and security which she derived from her employment, and which Defendants knew that she derived from her employment.

143. This conduct by Defendants was intended to cause plaintiff emotional distress or was done with reckless disregard of the probability of causing plaintiff emotional distress.

144. Plaintiff suffered severe emotional distress as a legal result of Defendants' outrageous conduct. Plaintiff suffered severe mental distress, suffering and anguish as a legal result of Defendants' outrageous conduct, reacting to her discharge with humiliation, embarrassment, anger, disappointment and worry, all of which is substantial and enduring.

145. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**TWENTY-SECOND CAUSE OF ACTION**
**Intentional Interference with Contractual Relations**

As a twenty-second, separate and distinct cause of action, plaintiff complains against all Defendants, and each of them, and for a cause of action alleges:

146. Plaintiff hereby incorporates by reference Paragraphs 1 through 22 inclusive, as though set forth here in full.

147. Plaintiff claims that DOES 51-70 intentionally interfered with the employment contract and/or commission contract between her and SAP.

148. At the time of hire in 2016, Plaintiff entered into an employment contract with SAP for wages and benefits and commissions. Subsequently that contract was altered to reflect changes in pay, benefits and commissions. Plaintiff also entered into a commission agreement with SAP.

149. DOES 51-70 were aware of the employment and/or commission contract between SAP and Plaintiff.

150. DOES 51-70 intentionally defamed and or disparaged Plaintiff to SAP so that SAP

would want to terminate Plaintiff from her employment.

151.    DOES 51-70 intentionally and falsely accused and exaggerated information about the Plaintiff so that they would benefit financially by her termination.

152.    DOES 51-70 knew that their conduct, statements, disparagement and defamation about the Plaintiff would disrupt the performance of the contract or knew that the defamation and disparagement was substantially certain to occur and it was their intention to disrupt the contract between SAP and Plaintiff.

153.    Plaintiff was harmed as a result of the above described conduct.

154.    The conduct of DOES 51-70 was a substantial factor in causing harm to Plaintiff.

155.    Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**DAMAGES**

156.    As a legal result of the conduct by Defendants of which Plaintiff complains, Plaintiff suffered and continues to suffer substantial losses in earnings, including commissions, and other employee benefits.  Plaintiff will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

157.    At the time Plaintiff entered into the employment agreement and continuing thereafter, all parties to the agreement contemplated and it was reasonably foreseeable that breach of the agreement would cause Plaintiff to suffer emotional distress.  At all times, it was likely in the ordinary course of things that breach of the employment agreement would cause Plaintiff to suffer emotional distress.  The terms of the employment agreement related to matters which directly concerned Plaintiff's comfort, happiness and personal welfare, and Defendants were aware of this at the time they entered into the agreement and continuing thereafter.  The subject matter of the employment agreement was such as to directly affect Plaintiff's self-esteem and emotional well-being, and Defendants were aware of this at the time they entered into the agreement and continuing thereafter.

158.   Plaintiff suffered emotional distress as a legal result of the conduct by Defendants of which Plaintiff complains.  Plaintiff suffered mental distress, suffering and anguish as a legal result of Defendants' outrageous conduct, reacting to her discharge and denial of commissions with humiliation, embarrassment, anger, disappointment and worry, all of which is substantial and enduring.  Plaintiff will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

159.   At all material times, Defendants, and each of them, knew that Plaintiff depended on her wages, commissions, and other employee benefits as a source of earned income.  At all material times, Defendants were in a position of power over Plaintiff, with the potential to abuse that power.  Plaintiff was in a vulnerable position because of her relative lack of power, because of her reliance on Defendants' assurances and forbearance of the possibility of becoming employed elsewhere, because she had placed her trust in Defendants, because she depended on her employment for her self-esteem and sense of belonging, because she relied upon her employment as a source of income for her support, because a wrongful termination of Plaintiff's employment would likely harm Plaintiff's ability to find other employment, and because of the great disparity in bargaining power between Plaintiff and her employer.  Defendants were aware of Plaintiff's vulnerability and the reasons for it.

160.   Notwithstanding such knowledge, Defendants, and each of them, acted oppressively, fraudulently, and maliciously, in willful and conscious disregard of Plaintiff's rights, and with the intention of causing or in reckless disregard of the probability of causing injury and emotional distress to the Plaintiff.

161.   Further, Defendants were informed of the oppressive, fraudulent and malicious conduct of their employees, agents and subordinates, and ratified, approved, and authorized that conduct.

162.   The foregoing conduct of Defendants, and each of them, was intentional, willful and malicious and Plaintiff is entitled to punitive damages in an amount to conform to proof.

163.   Plaintiff also is entitled to attorneys' fees and costs pursuant to California Government Code § 12965(b) and/or 42 U.S.C.A. § 2000e-5(k) and/or California Labor Code

- 28 -

COMPLAINT

§218.5.

## INJUNCTIVE RELIEF

164.    Plaintiff has suffered irreparable injury and immediate harm due to Defendants' acts.  Plaintiff has no other legal remedy.  In addition to the other relief requested in this Complaint, Plaintiff seeks injunctive relief to ensure that Defendants do not discriminate against, harass, and/or retaliate against other employees because of their disabilities and/or engagement in protected activities.

## PRAYER

Wherefore Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    For a money judgment representing compensatory damages including lost wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and emotional distress, according to proof;

3.    For an award of punitive damages, according to proof;

4.    For costs of suit and attorney fees;

5.    For prejudgment and postjudgment interest;

6.    For injunctive relief;

7.    For any other relief that is just and proper;

8.    For attorney fees pursuant to Cal. Gov't. Code § 12965(b) and/or 42 U.S.C.A. § 2000e-5(k) and/or C.C.P. § 1021.5.

Dated: May 7, 2019                    LAWLESS & LAWLESS


                                      by      /s/ Barbara Lawless
                                              Barbara A. Lawless
                                              Attorneys for Plaintiff

///

- 29 -

COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff demands trial of all issues by jury.


Dated: May 7, 2019                          LAWLESS & LAWLESS


by      /s/ Barbara Lawless

Barbara A. Lawless
Attorneys for Plaintiff

COMPLAINT